BENNETT WOOSTER, Plaintiff in Error,

*vs.*

HARSON NORTHRUP and SALLY C. NORTHRUP, his wife; JOSEPH R. MARSHALL and MARTHA A. MARSHALL, his wife; STILES S. NORTHRUP and MARSHALL A. NORTHRUP, Defendants in'Error.

ERROR TO THE CIRCUIT COURT OF ROCK COUNTY.

The act of the legislature (*Sess. Laws*, 1850, *chapter* 44), does not clothe married women with the same power, and impose upon them the same responsibility in respect to the maintaining and defending actions at law as belonged to them when sole.

The principal object in the passage of chapter 44 of Session Laws of 1850, was to prevent the property of the wife from being liable for the debts of the husband, and from being sold or controlled by him.

A married woman in this state has not an unlimited power to engage in trade, and to contract debts, irrespective of the property which belonged to her.

A married woman may convey and devise her separate property, in the same manner and with like effect, as though she were sole, and can acquire title to property in any of the modes pointed out in chapter 44 of Session Laws of 1850.

Although a married woman under our statute has power to convey her property, and to receive the price for which it is sold, and to purchase other property with the proceeds, to bring suits either in her own name or jointly with her husband, when the subject matter is her separate property; yet it does not follow that she has the power to contract debts in such a manner as to become liable to a personal action.

Nor has a married woman the power to engage in trade, on her own exclusive account, except so far as may be necessary to manage the property which she may separately own.

An unlimited power of a married woman to engage in trade and business on her own account, and to sue and be sued, is not to be inferred or upheld, but by the clearest import of the statute.

It is unnecessary to plead the coverture of the defendant in abatement, where that fact is alleged in the declaration.

Where the coverture takes place since the making of the contract sued on, and is set up by the defendant to defeat the action, it should be pleaded in abatement. But where the plaintiff himself sets up the fact of coverture in his declaration, in such a manner as would defeat his action, advantage may be taken of it by demurrer.

Where the coverture of the defendant exists at the time of making the contract sued on, the fact may be pleaded in bar, for the reason that the defendant cannot give the plaintiff a better writ.

Where too many defendants are joined, and the misjoinder appears on the face of the declaration, advantage may be taken by demurrer.

The privilege given to the plaintiff by statute, of discontinuing as to certain defendants and proceeding to judgment as to others, must be taken advantage of in the Circuit Court, at the proper stage of the proceedings, and cannot be exercised on error in the Supreme Court.

If the court below improperly refuse the privilege of discontinuing, as to some defendants, when demanded by the plaintiff, such refusal is error, and may be made available by proper and timely exceptions.

In general a married woman cannot be sued, during coverture, on a promissory note, given by her during coverture, though for a valuable consideration.

THIS was an action of assumpsit commenced in the Rock Circuit Court, by the plaintiff in error against the defendants in error, upon a promissory note, executed by the latter, and payable to Hannah M. Wooster, the wife of the plaintiff in error, or bearer.

The declaration was in assumpsit, " for that whereas, heretofore, to wit : on the 21st day of October, A. D. 1852, at Beloit, in said county, the said defendants, Harson Northrup and Sally C. Northrup, who then was, ever since has been and now is the lawful wife of the said Harson Northrup ; Joseph R. Marshall and Martha A. Marshall, who then was, ever since has been and now is the lawful wife of the said Joseph R. Marshall; Stiles S. Northrup and Marshall A. Northrup, made, executed and delivered to one Hannah M. Wooster, who then was, ever since has been and now is the lawful wife of said plaintiff, their certain promissory note in writing, the date of which is the day and year last aforesaid, in and by which said promissory note, the said defendants jointly and severally promised, for value received, to pay said Hannah M. Wooster or bearer the sum of $5,804, in three years, from the first day of February then next, with interest annually at the rate of eight per centum, commencing on the first day of June then next, payable at the residence of H. Northrup, in said Beloit.

" And the said plaintiff avers, that the said Sally C. and Martha A. made, executed and delivered the said promissory note,

as aforesaid, in part payment of, and for the assignment, transfer and relinquishment by the said Hannah M. to the said defendants, then and there made, of certain rights and interests which she, in her own right, and to her sole separate use, owned, had and held in certain property in which the said Sally C. and Martha A. were also interested, and held estate of value in their sole separate right, apart from and independent of their respective husbands; and which said interest and estate of the said Sally C. and Martha A., they, the said Sally C. and Martha A., had received, during their respective covertures, and since the 44th chapter of the laws of this state, passed in A. D. 1850, entitled, 'An act to provide for the protection of married women in the enjoyment of their own property,' has been in force and effect as a law; but not received from their respective husbands, nor had either of them received the same, or any part thereof, from her husband, or the husband of either of them; and which said interest and estate the said Sally C. and Martha A. were by law then and there owning and holding to their sole separate use, with full power to sell and dispose of the same, in the same manner and with like effect, as if they, the said Sally C. and Martha A., had then both been unmarried.

"And the said plaintiff avers, that he is now the owner and bearer of said promissory note, and that the said defendants, though often, and particularly at the residence of H. Northrup, on the 4th day of February, A. D. 1856, requested, have ever and still do refuse to pay the same, or any part thereof.

"To the damage of the plaintiff to $10,000, to recover which he brings suit, &c."

To this declaration all the defendants demurred, and assigned causes:

"1. The said declaration is in case, when it ought to be in assumpsit.

"2. The said declaration shows that the said Sally Northrup and Martha A. Marshall, at the time of making the said promissory note in the said declaration mentioned, were, and ever since have been and now are married women, and they are joined

with other defendants in the said declaration, upon a joint promise and undertaking.

"3. The said declaration does not state, allege or set forth any good and sufficient consideration for the making of said promissory note by the defendants Sally Northrup and Martha A. Marshall.

"4. The said plaintiff is not entitled to recover against all the said defendants, and, therefore, is not entitled to judgment against any or either of them in this action.

" The said declaration is, in other respects, uncertain, informal and insufficient in the law to be answered unto. Whereupon, for want of a sufficient declaration in this behalf, the said defendants pray judgment, and that the said plaintiff may be barred from having and maintaining his aforesaid action thereof against them," &c.

There was joinder in demurrer; the demurrer was sustained by the court below, and judgment was rendered for the defendants, to reverse which this writ of error is sued out.

*Carpenter & Rockwell*, for the plaintiff in error, contended that the main question to be determined in this case, is, can a married woman, holding property, or an interest in property, under our married woman's law, make a valid contract in regard thereto, or extinguish a joint interest therein? By the common law the personal or rather legal identity of the wife, was for most purposes merged in the husband. In the law she was not considered as a person; could make no contracts, could be compelled to respond to none; she had no recognized individual existence. But the legislature had changed this state of things, and had essentially modified the legal relation of husband and wife, with the wisdom of which change the courts had nothing to do. He cited the 3d section of the act for the protection of married women in the enjoyment of their separate property, and insisted that by the provisions thereof, she may receive estate, and then enjoy and dispose of it " in the same manner, and with like effect as if she were sole;" that this clause applied to every preceding clause of the section, to the receiving as well as to the

holding and disposing of the estate. She "may receive by grant, real or personal property in the same manner as if she were sole."

The word grant is taken largely when anything is granted or passed from one to another. And in this sense it doth comprehend feoffments, *bargains and sales*, gifts, leases, charges, and the like; for he that doth give or sell, doth grant also. *Shep. Touch.* 228; *Story, J.,* 4 *Mason,* 69; *Burrill's Law Dict. tit. Grant.*

She may receive then by *bargain and sale*, which is included in the word "grant," or in other words, she may purchase real and personal property in the same manner as if she were unmarried. She may therefore purchase on credit, and become subject to all the rights and liabilities pertaining to such transactions.

2. But however this may be, the giving of the note declared on, to extinguish the joint interest which the payee held in the note, and in property in which the married women were also interested in their own right, differed in no way from the giving of a note by them to extinguish a mortgage or other incumbrance on the property. The right to give such a note is one of the necessary incidents of ownership; and the legislature, by enabling the wife to hold property, has impliedly bestowed upon her all consequential rights and incidents. Besides, this power to make valid contracts in respect of her separate property, is necessary to enable her to *hold* and enjoy her property *in the same* manner as if she were unmarried. If she owns a farm, may she not cultivate it? and for that purpose, may not contracts to that end be enforced against her? Otherwise, how is it possible that she can hold and enjoy, that is, the rents, issues and profits thereof, " in the same manner as if she were unmarried?" If she can, then such contracts can be enforced against her; if she cannot, how can she hold and enjoy her property with the rents, issues and profits thereof in the same manner as if she were sole? May she not contract for repairs, restore deterioration occasioned by usual wear, or inroads of the elements? The statute intended to free married women, as regards their own property, from all the disabilities of coverture.

3. The statute is as silent as to the right of the married woman to bring a suit in her own name, as it is about her giving a note in her own name; yet this court, in *Norvall vs. Rice* (2 *Wis.* 20), decided that she might sue in her own name, as that was necessary to carry out the view of the statute, and was therefore included in what the legislature expressly granted.

4. The judgment must be reversed, even if the foregoing grounds are untenable, because *coverture* is a personal privilege, and must be pleaded, even if it appear in the declaration. *Peck vs. Cheney,* 4 *Wis.* 249 ; *Conde vs. Shepard,* 4 *How. Pr. Rep.* 75.

5. The demurrer is bad, as to the women, because not pleaded by them in person, and bad, as to the men, because the coverture of the women is no defence for the men.

The above points are the material ones, but others were made on the argument, all of which are reviewed in the opinion of the court.

*Sleeper,* for the defendant in error.

1. The question to be settled in this case is not, as contended by the plaintiff in error, whether a married woman holding property, or an interest in property, under our married woman's law, can make a valid contract in relation thereto, or extinguish her joint interest therein: but it is, can a personal action at law be maintained against a married woman, upon a promise made by her alone, or with her husband, during coverture ; or has the statute referred to, repealed or altered the common law, so that now, a *feme covert* can bind her person as well as her property by a promise to pay a debt, the same as if she were sole ?

The act of the legislature under consideration, is " An act for the protection of married women," not an act to ruin and destroy them, " in the enjoyment of their own property." The object of the act, its whole purview, is to withdraw all the property of a wife from the control of her husband, and from liability for his debts. She is now, by the act referred to, protected in the enjoyment of her own property, and may now, not only receive the property, but she may sell and dispose of it. She may purchase property and pay for it; or pledge any

property she has at the time, for the payment of the debt or liability thus contracted ; but this does not imply a power on her part to incur a personal liability upon which she may be sued at law. The object of the statute was to exempt the property of the wife from the control of her husband, and from liability for his debts, and to enable her to convey or dispose of it.

Before the passage of the act of the legislature, there was no legal objection to a married woman receiving property by gift, grant or devise ; the only difficulty was, that it was subject to the control of her husband, and liable for his debts, unless such effect was provided against in the conveyance, by making it a separate estate, capable of being conveyed by her, without the joining in the conveyance, or consent of the husband. The statute has removed the disability to convey and devise her property, and enables her to hold it to her own separate use. The proper construction of the statute is, not that the *feme covert* may receive property in the same manner as if she were unmarried, but the words, " in the same manner as if she were unmarried," should apply to her power to " hold to her sole and separate use, and convey and devise real and personal property, or any interest or estate therein, and the rents, issues and profits thereof. Such a construction gives force to the act, by removing disabilities which before existed.

The promise of a *feme covert*, made during coverture, was void at common law. By what word or line of the statute is it provided that she may bind herself by promise or contract? Wherein does the act make her promissory note or contract binding upon her, as a mere personal promise or liability ? There is no such provision, express or implied, in the act of the legislature referred to.

The act has relieved them and their property from, but not incumbered it with, liabilities to which they were not subject before it was in force. Before the passage of the act, it was competent for a married woman, having a separate estate, to appoint it to the payment of a debt, or charge it with the discharge of some liability. This might be done in various ways. Nor is it denied that she might acquire property by bargain and sale ;

for if she have a separate estate it is in her power to appoint it to the payment of some debt, or the liquidation of some liability. This is no new power. She could do all this at the common law, and all that the act has conferred upon her is, to hold it to her own separate use, and convey and devise it. *Vanderheyden vs. Mallory*, 1 *Comst. Rep.* 452; *Yale vs. Dederer*, 21 *Barb. S. C. R.* 286; 8 *How. Pr. Rep.* 500.

The only remedy, if any, which the plaintiff has against the married women defendants was by bill in equity. He might have prosecuted the other defendants alone to judgment, but he cannot subject the property of the married women defendants by personal action and judgment against them. *Coon vs. Brook*, 1 *Barb. S. C. Rep.* 546.

The counsel for the defendants further argued the case, but the foregoing gives the material points made, so far as the points in judgment are concerned, and hence a further statement is necessarily precluded.

The following points and authorities were also submitted by the plaintiff in error.

1. The declaration is special, and counts upon a promise contained in a note; it alleges coverture in two of the defendants, and avoids by alleging that the promise made by them was of and concerning their sole and separate property, received by them since the married woman's act of 1850, and not by or through their husbands. Now, *quere*: Are they liable upon their personal contracts in relation thereto? We answer, yes.

*First*, Because the statute of 1850, chap. 44, authorizes her to " *receive by inheritance, or by gift, grant, devise or bequest, and hold to her sole and separate use, and convey and devise real and personal property, and any interest or estate therein, in the same manner, and with like effect as if she were unmarried;*" for if she can *receive by grant* (which is bargain and sale), a corresponding obligation to pay devolves upon her. And, *second*, If she can *receive and convey real and personal property, or any interest or estate therein, the same and with like effect as if she were unmarried*, she can bind herself by contract, independent of her husband, for the especial benefit, enjoyment or improvement of her separate estate ; for

this a *feme sole* could do. *Laws of* 1850, *chap.* 44, *p.* 29; 2 *Greene (Iowa),* 435; *Greenough vs. Wigginton and wife; Norval vs. Rice et al.,* 2 *Wis.* 22; 16 *Lev.* 212.

2. The demurrer is interposed by all the defendants; whereas the plea of infancy or coverture is a personal privilege, and can only be taken advantage of by the *infant* or *feme covert. Tuttle vs. Cooper,* 10 *Pick.* 291; *Van Bramer vs. Cooper,* 2 *John.* 279; 5 *Johnson,* 160; 21 *Wend.* 457.

3. The contract declared on is joint or several, and under our *statute* and under the *law,* judgment can be entered against the other defendants without the plaintiff being nonsuit and commencing anew; hence a demurrer by all is bad. *R. S., p.* 532, *sec.* 18; *same authorities as above, also Woodward vs. Newhall,* 1 *Pick.* 500; *Cutts vs. Gordon,* 13 *Maine,* 474; *Judson vs. Gibbons,* 5 *Wend.* 224.

4. Suppose the declaration to have been on the note simply, without alleging coverture of some of the defendants, and *all* defendants had joined in a plea of coverture of two of the defendants, would not a demurrer to such a plea be sustained? Most certainly, *a fortiori,* will a demurrer by all defendants to a declaration showing the coverture of two defendants, be overruled. *Van Bramer vs. Cooper,* 2 *John.* 279.

*By the Court,* WHITON, C. J. The principal question to be decided in this case is, whether a married woman can be sued upon a promissory note given by her for a valuable consideration.

The declaration avers that two of the defendants were married women at the time of making the note declared on, and that their coverture still continues. The declaration also avers that the note was made in part payment for an interest in certain real estate which the payee of the note (who was also a married woman) had in certain property, which was sold and transferred by the payee to the said two married women, and which property the said payee held in her own sole right, jointly with the two

married women who are defendants. The declaration also avers that the last-named defendants acquired their right or interest in the property during their coverture, but since the passage of an act of the legislature, entitled; "An act to provide for the protection of married women in the enjoyment of their own property," and that they held the same to their own sole and separate use, with full power to sell the same, as if they were unmarried. The plaintiff sues as the bearer of the note.

To the declaration the defendants demurred, assigning causes. The demurrer was sustained, and judgment was rendered for the defendants. It has been contended by the counsel for the defendants in error, that the question as to the liability of *femes covert* to be sued upon contracts made in relation to property which is secured to them by the act of the legislature above alluded to, does not arise in this case, for the reason that it does not appear that the note, which is the foundation of this suit, was given for property which the married women who are defendants could hold to their separate use; nor that the married woman who is the payee of the note owned the property, the sale of which constituted the consideration of the indebtedness for which the note was given.

The reason urged in support of this position is, that as the declaration does not show when the women were married, it cannot be presumed that they were married since the act of the legislature was passed securing to married women the property they may own at the time of their marriage. It is contended that the act in question cannot affect the rights of the husband to the property which the wife owns at the time of the marriage, nor to that which she may acquire afterwards, if the marriage took place before the passage of the act, because the husband's right to the property is to be determined by the law as it stood at the time the marriage was consummated. This is an important question, but we shall not decide nor discuss it in disposing of this case, but shall dispose of it upon other grounds. The act of the legislature upon which the plaintiffs in error rely, was passed on the first day of February, A. D. 1850. *Sess. L.* 1850, *ch.* 44. The third section provides that any married female

may receive real and personal property from any one except her husband, and hold the same to her sole: and separate use, and that she may convey and devise the same in the same manner and with like effect as if she were unmarried, and that the same shall not be subject to the disposal of the husband, nor be liable for his debts, &c. This case has been argued on the part of the counsel for the plaintiff in error, as though the act of the legislature above cited clothed married women with the same power, and imposed upon them the same responsibility, in respect to maintaining and defending actions at law, as belonged to them when sole. We think this is a very erroneous view of the act of the legislature in question. A careful consideration of it has satisfied us that the principal object which the legislature had in view, was to prevent the property of the wife from being liable for the debts of the husband, and from being sold or controlled by him. To accomplish these objects, the legislature provided that the property which the wife owned at the time of her marriage should remain her own, and were careful to add that it should not be under the control of the husband, nor liable for his debts.

But it does not appear to have been the intention that she should have unlimited power to engage in trade, and to contract debts irrespective of the property which belonged to her. She may convey and devise her property in the same manner and with like effect as though she were sole, and she can acquire a title to property in any of the ways pointed out in the statute.

It was urged by the counsel for the plaintiff in error, that because the statute provided that she may receive property by grant, she must be liable to an action for the price of the property thus acquired, as the term "grant," as used in the statute, implies a contract. We do not think this consequence follows, even admitting that the legislature used the term in its strict technical sense. We have seen that she has unlimited power to convey her property. This implies the power to receive the price for which the property is sold, and to receive it in money or other property . It implies also the power to purchase property, because when the property is sold and the price

is received in money, it may be necessary to re-invest it in other property. She has also the power to bring suits, either in her own name, or jointly with her husband, when the subject matter of the suit is her separate property. *Norval vs. Rice et al.*, 2 *Wis Rep.* 22. All these powers she has, because they are all necessary to the full enjoyment of the right which the legislature have conferred upon her. But it is not necessary to the full enjoyment of this right, that she should have the power to contract debts in such a manner as to become liable to a personal action.

The legislature do not appear to have intended that she should have the power to engage in trade, except so far as may be necessary to manage the property which she may own. An unlimited power to sue and be sued, and to engage in trade and business on her own account possessed by the wife, would, if exercised, be destructive of domestic ties and entirely inconsistent with conjugal obligations. We must therefore hold that a personal action cannot be maintained under our statute against a married woman. *Howe vs. Wildes*, 34 *Maine Rep.* 266.

It was further contended by the plaintiff in error, that the coverture of the married women who are defendants, should have been pleaded in abatement. We cannot think this necessary when that fact is set out in the declaration. If it had taken place since the making of the contract sued on, and had been set up by the defendants to defeat the action, the authorities cited by the plaintiff in error would have been applicable : but surely, when the plaintiff himself sets up a fact in his declaration which would defeat the action if pleaded in abatement, advantage may be taken of it by demurrer. But when the coverture of the defendant exists at the time of making the contract which is the foundation of the suit, the fact may be pleaded in bar, for the reason that the defendant cannot give the plaintiff a better writ. 1 *Chit. Pl. (Philad. ed.)* 484 ; *Steer vs. Steer*, 14 *Serg. & R.* 379 ; *Gresser vs. Eckart*, 1 *Binney R.* 575.

The plaintiff in error further contends, that admitting the coverture of the two female defendants, constitutes a good defence as to them, still the judgment in this case is erroneous, because all of the defendants joined in the demurrer, and it is contended

that where there are several defendants, and they all join in a plea which would be good if pleaded by a part of them only, it is bad as to the whole. We think the principle contended for has no application to this case. We have seen that the promise of the two female defendants was void for all the purposes of this suit by reason of their coverture : they therefore should not have been made defendants.

The plaintiff's case shows that he has made too many defendants, and in all cases such a misjoinder can be taken advantage of under the plea of the general issue, or when it appears in the pleadings, by a demurrer, by a motion in arrest of judgment or by a writ of error. 1 *Chitt. Pl.* 50.

The plaintiff in error also relies upon our statute (*Rev. Stat. ch.* 100, § 18), which provides that in all cases where the action is founded upon contract, the plaintiff may be allowed at any time before the cause is committed to the jury, to discontinue as against any of the defendants, and take judgment against the others, in the same manner as though the action had been originally brought against them alone. This section of the statute gives to a plaintiff a privilege of which the plaintiff in this case does not appear to have availed himself. If he had offered to comply with the statute, and the judge had refused to grant him the privilege which the statute gives him, we have no doubt but such refusal would have been error. But the plaintiff made no such offer ; he chose to continue his action as he had originally commenced it, and cannot now set up a right under the statute.

Judgment affirmed.