## FORDYCE v. HICKS *et al.*

1. **Fraudulent Conveyance:** VALID EXCEPT AS TO CREDITORS. A fraudulent conveyance of real estate, as between the parties and all the world except creditors, is valid, and vests the title in the grantee. (See cases cited in opinion.)

2. ———: ACTIONS TO SET ASIDE: PRIORITY OF RIGHT. The creditor who first *begins* an action to set aside a fraudulent conveyance of land by his debtor obtains the first lien, even though another creditor, who begins his action later, obtains the first judgment to set aside the conveyance.

3. ———: ———: ———: PURCHASE OF JUDGMENTS BY FRAUDULENT GRANTEE: MERGER. After a fraudulent conveyance of land, certain actions were brought to subject the land to the payment of certain judgments against the grantor, and these judgments were afterwards assigned to the grantee, but the actions were never prosecuted to a termination. Afterwards this action was begun by another judgment creditor of the grantor for the same purpose. *Held* that the judgments purchased by the fraudulent grantee did not merge in the legal title simply because he could not prosecute to judgment, against himself, the action to subject the land to their payment, and that a decree subjecting the land to the payment of the judgment sued on in this case was erroneous in not providing for the payment, first, of the judgments purchased by the grantee, which were prior liens on the land, and in no way tainted with the fraud in the conveyance. (See opinion for cases followed.) [REED, J. *dissenting*.]

*Appeal from Monroe District Court.*—HON. DELL STUART, Judge.

FILED, OCTOBER 25, 1888.

ACTION in equity, judgment for plaintiff, and defendants appeal.

*T. B. Perry,* for appellants.

*H. L. Dashiell,* for appellee.

SEEVERS, C. J.—In 1882 the defendants William

Hicks, Aaron Hicks and T. S. Tharp became indebted to Malvina Bone, the plaintiff's intestate. A judgment was recovered in 1884 on such indebtedness against William Hicks and T. S. Tharp. Afterwards, in 1886, a judgment was recovered on the same indebtedness against the defendant Douglass, executor of Aaron Hicks. In 1883, Aaron and William Hicks conveyed certain real estate to said Douglass, as the plaintiff claims, for the purpose of defrauding their creditors; and the object of this action, which was commenced in 1887, is to set aside the conveyance, and subject the real estate to the payment of the judgment. The defendants answered, denying the petition, and admitted the recovery of the judgments and the conveyance; but denied that the same was made for a fraudulent purpose. The defendant Douglass filed a cross-petition, and pleaded that, in 1883, Cassady, Wallace and Ramsay recovered three several judgments against William and Aaron Hicks, who commenced in the same year three several actions to set aside the conveyance to Douglass, and subject the real estate described in the petition to the payment of these judgments; and in 1886 and 1887 the said judgments were sold, assigned to, and became the property of said Douglass. The actions commenced by Cassady, Wallace and Ramsay are still pending and undetermined. The relief asked in the cross-petition is that the three last-named judgments be. declared to be superior to the plaintiff's judgment, and that he be decreed to pay off and satisfy the same before selling the real estate in satisfaction of his judgment. There was a demurrer to the cross-petition, which was sustained, and the only question we are required to determine is whether the court erred in so ruling.

I. Counsel for the appellant properly concedes that, for the purpose of this case, the conveyance of the real estate must be regarded as fraudulent as to the creditors of Hicks. While this is so, the conveyance, as between the parties and all the world except creditors, is valid,

1. FRAUDULENT conveyance: valid except as to creditors.

Fordyce v. Hicks.

and vests in the defendant the title to the real estate. *Stephens v. Heirs of Harrow*, 26 Iowa, 458; *Mellen v. Ames*, 39 Iowa, 283. It does not seem material to determine whether Cassady, Wallace, and Ramsay became vested with a valuable lien under and by virtue of the judgments in their favor, for the reason that they commenced their actions in equity to subject the real estate to the payment of such judgments in 1883, which was prior to the time the judgment under which the plaintiff claims was recovered; but they did obtain such lien when they commenced such actions in equity. In *Bridgman v. McKissick*, 15 Iowa, 260, 265, it is said that "it has long been the settled doctrine in equity that the filing of such a bill in chancery has the effect of creating a specific equitable lien upon the thing or property sought to be subjected to the execution, for the reason, perhaps, that the commencement of such suit operates as a *lis pendens* notice, and stops all successful alienation of the property in question, and keeps it within the control and jurisdiction of the court;" and it was held in that case that the creditor who first commences his action in equity obtains priority. It follows that Cassady, Wallace and Ramsay, by the commencement of their actions, obtained priority to the plaintiff; for the reason that this action was not commenced until 1887.

II. Appellant claims that by his purchase, and the assignment of the judgments to him, he obtained all the rights of Cassady, Wallace and Ramsay, or, if not, he obtained the right to demand and have the judgments owned by him declared to be superior to that of the plaintiff, who insists that the defendant is not entitled to such relief, for two reasons. The first is that, inasmuch as the defendant is a fraudulent grantee, he did not, by his purchase of said judgments, obtain any right whatever. As we have seen, Cassady, Wallace and Ramsay obtained liens when they commenced their action in equity. This being true, the defendant

certainly obtained such lien when the judgments were assigned to him. The mere fact that he is a fraudulent grantee can make no difference. He was the owner of the real estate ; and as such he had the right to pay off or purchase the indebtedness of his grantors. He could thus pay or obtain all or a part of such indebtedness, and in that way perfect his title against the only parties who could question it. The plaintiff is in no respect injured by this action of the defendant, for the latter only succeeds to the rights of Cassady, Wallace and Ramsay, and seeks to enforce only such right or claim as could have been enforced by them. In *Smith v. Grimes*, 43 Iowa, 356, it was found that Grimes was a fraudulent grantee, and the conveyance of the real estate to him was adjudged to be void as to creditors ; but, inasmuch as he had procured the assignment of a certain mortgage and judgments which were liens upon the real estate, it was held that, as to such mortgage and judgments, Grimes was entitled to protection ; and, as they were liens prior to that of the plaintiff, they must be first paid from the proceeds of the sale of the real estate under the decree. The court said : " We are not required to punish the fraud by setting aside these assignments, and holding the liens to have been paid. * * * We are required to determine the rights of the parties, not to administer punitive justice." The fact that in the cited case the mortgage and judgments were liens on the real estate prior to the conveyance is immaterial. The lien obtained by the commencement of the actions in equity is certain and well defined, and precisely the same which the plaintiff seeks to enforce in this action. The character of the lien can make no difference, provided it can be enforced by or is available in the hands of the party claiming under it.

The second ground upon which appellee claims the defendant is not entitled to the relief asked in the cross-petition is that the liens obtained by Cassady, Wallace and Ramsay cannot be enforced against the defendant, because he holds both the legal title to the land and the

Fordyce v. Hicks.

lien. That is to say, the claim is that a person cannot enforce the lien against himself; and incidentally, at least, the appellee insists there has been a merger of two estates, titles, or rights. A conclusive answer to the first ground just stated, it seems to us, is that precisely the relief asked can be granted in this action, for the reason that such measure of relief was granted in the case of *Smith v. Grimes*, before cited. The plaintiff in this case, as in that, seeks to set aside a fraudulent conveyance, and has succeeded in so doing; but the decree fails to provide for the payment of prior liens. The defendant does not ask that the conveyance be set aside. He is content to let the title remain as it is, and he does not ask that his lien be enforced against himself; but, if the conveyance is set aside at the instance of the plaintiff, the defendant simply asks that the lien owned by him, which exists independent of the fraudulent conveyance, and is in no way tainted with the fraud, shall be protected. We fail to see why he is not entitled to such relief. As to the merger, we desire to say that two estates have not merged in the defendant. He simply owns the legal title to the real estate, and also owns certain liens thereon. Now, have such liens, because owned by the same person, merged in the legal title? The ground relied on by counsel we understand to be that the merger exists simply because the liens cannot be enforced by an action commenced by the defendant. But this reason is not satisfactory; for the reason that the lien, as we have shown, ought to be recognized and protected in this action. Besides this, the settled doctrine in this state we understand to be is that a merger will not ordinarily, at least, be declared, unless it is for the interest of the person claiming the two estates or rights that such should be done, or that it was so intended. *Vannice v. Bergen*, 16 Iowa, 555; *Lyon v. McIlvaine*, 24 Iowa, 9; *Shimer v. Hammond*, 51 Iowa, 401. Clearly, it appears to us that it is not the interest of the defendant that his lien should merge in the legal title, and certainly such was not his intention. We fail to see why, although he is a fraudulent grantee,

he may not purchase or obtain the assignment of a lien which may be declared superior to the legal title, provided the lien has no connection with the fraud, and exists independent of it. Conceding that the defendant is a fraudulent grantee, he is not an outlaw. The judgment of the district court must be

REVERSED.

REED, J., (*dissenting.*) I do not concur in the conclusion reached by the majority in this case. The judgments which were purchased by and assigned to defendant Douglass are not liens upon the real estate. It was said in *Howland v. Knox*, 59 Iowa, 46, that "the defendant in a judgment has no such interest in real estate, equitable or otherwise, which he has conveyed away to defraud his creditors, as is the subject of a lien in favor of the judgment creditor." According to the holding in that case the lien is created, not by the judgment, but by the decree subjecting the property to its satisfaction. And to the same effect is *Boyle v. Maroney*, 73 Iowa, 70. True, the institution of the equitable action creates a *lis pendens;* but that is notice to the world merely of the claim that is made, and a purchaser during the pendency of the litigation takes the property subject to whatever rights may be established by the judgment. If, then, the lien is created by the decree subjecting the property to the satisfaction of the judgment, it seems to me impossible that Douglass should acquire any rights as to the land by his purchase of the judgment; for, while the equitable action brought to subject the property to the satisfaction has not been dismissed, the parties by that transaction have rendered it impossible that it should even be prosecuted to judgment. As the judgment plaintiffs have parted with all interest in the judgments, they have no interest to be protected, and clearly Douglass cannot prosecute the action against himself to subject the property in his own hands to the satisfaction of the judgments which he now owns. *Smith v. Grimes*, cited by the majority, is not in point. In that case Grimes, the fraudulent grantee, bought in a mortgage and judgment which

were liens on the real estate at the time of the fraudulent conveyance ; and it was held that these liens should be preserved while the conveyance was set aside. The distinction between that and the present case is in the fact that in it the liens existed at the time of the conveyance, and the grantee took the property subject to them, while in this no lien ever in fact existed.